

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**GINA PEPE**                                                                    **PLAINTIFF**

**v.**                                        CIVIL ACTION NO. _1:06CV1039 LG RHW_

**MISSISSIPPI STATE PORT AT GULFPORT;
MISSISSIPPI STATE PORT AUTHORITY;
MISSISSIPPI DEVELOPMENT AUTHORITY;
TURBANA CORPORATION;
CHIQUITA FRESH NORTH AMERICA L.L.C.;
DOLE FOOD COMPANY, INC.;
CROWLEY AMERICAN TRANSPORT, INC.;
CROWLEY LINER SERVICES, INC.;
SSA MARINE, INC.; ABC CORPORATION;
XYZ COMPANY**                                                           **DEFENDANTS**

### NOTICE OF REMOVAL

COME NOW Defendants, Crowley Liner Services, Inc. ("CLS") and Crowley American

Transport, Inc. ("CATI")[1] (CLS and CATI, while reserving all applicable defenses, to be

collectively known as "Crowley" for purposes of this Notice of Removal), by and through

undersigned counsel of record, and file this Notice of Removal of this action filed by Gina Pepe

("Plaintiff") to the United States District Court for the Southern District of Mississippi, Southern

Division, and in support thereof would show unto the Court the following:

---

[1] CATI is not a proper party to this action as a result of the acquisition of CATI by Hamburg-Sud in 2000. CATI was not operating at the port at the time of Hurricane Katrina. In addition, CATI had no property whatsoever at the port on August 29, 2005.

## INTRODUCTION

This is not a case where an insurance company claims that its agent was improperly joined as has been asserted in so many other cases. The properly-joined Defendants in this case, as diverse corporations, have the <u>right</u> to proceed in Federal Court. State statutes directly on point provide complete immunity to the <u>state agencies</u>. These agencies have been improperly joined by Plaintiff solely in an effort to defeat diversity.

As further discussed below, all state agency decisions at issue were emergency management activities made after August 24, 2005, and thereby have unqualified immunity pursuant to § 33-15-21 of the Mississippi Code under the Mississippi Emergency Management Law ("Emergency Management Law").[2] In the alternative, all state agency decisions at issue were discretionary and are immune from liability under the Mississippi Tort Claims Act ("MTCA"), §§ 11-46-1, *et seq.* of the Mississippi Code. Plaintiff's allegations against the state agencies should alternatively be dismissed due to the fact that the <u>required</u> statutory notice was not given <u>prior</u> to filing suit under the MTCA. In any event, the state agencies identified are not liable for the alleged actions of the tenants. Plaintiff cannot overcome the Emergency Management Law, state immunity statutes, case law and the Declaration of Dale Waltman attached to the Notice of Removal. Stated differently, there is simply no possibility of state law imposing liability upon the improperly joined state agencies under any theory raised by Plaintiff.

Plaintiff has improperly joined the Mississippi State Port at Gulfport, the Mississippi State Port Authority at Gulfport ("Port Authority") and the Mississippi Development Authority ("MDA") as defendants in this matter solely in an attempt to remain in state court. The properly-

---

[2] The complete Mississippi Emergency Management Law can be found at §§ 33-15-1, *et seq.* of the Mississippi Code.

joined Defendants in this case, as diverse corporations, have the <u>right</u> to proceed in Federal Court

for the following reasons:

(1) The "Mississippi State Port at Gulfport" is not a legal entity and is not a proper defendant as it is merely a reference to a geographic location owned by the State of Mississippi, and the instant action is not an *in rem* proceeding;

(2) Under the Emergency Management Law, Plaintiff's allegations relate to alleged acts or omissions that concern the performance of emergency management activities for which state agencies (including the Port Authority and the MDA) have <u>unqualified immunity</u>. *See* Miss. Code Ann. § 33-15-21;

(3) The MTCA grants the Port Authority and the MDA immunity because Plaintiff's allegations of liability relate to discretionary functions. *See* Miss. Code Ann. § 11-46-9(1)(d);

(4) The MTCA grants the Port Authority and the MDA immunity because Plaintiff's allegations of liability relate to the adoption or failure to adopt adequate rules or procedures. *See* Miss. Code Ann. § 11-46-9(1)(a) and (e);

(5) The MTCA grants the Port Authority and the MDA immunity because Plaintiff's allegations of liability relate to dangerous conditions at the port allegedly caused by parties other than the Port Authority or the MDA. *See* Miss. Code Ann. § 11-46-9(1)(v);

(6) The MTCA, which provides the exclusive remedy against a state agency, dictates that certain notice requirements must be included in a notice to a state agency, and Plaintiff has failed to comply with such notice requirements to either the Port Authority or the MDA. *See* Miss. Code Ann. § 11-46-11; and

(7) The Port Authority and the MDA serve the State of Mississippi in the capacity of landlord to the tenants at the port, including the tenants that have been named as defendants herein. As such, the law of Mississippi is clear that an out-of-possession landlord is not liable for any alleged unsafe condition on such premises.

Based on the face of Plaintiff's Complaint and the law and facts referenced herein, there

is no possibility of state law imposing liability on the Mississippi State Port at Gulfport, the Port

Authority or the MDA. The Mississippi State Port at Gulfport, the Port Authority and the MDA,

therefore, have been improperly joined in this action and their citizenship for purposes of this Court's jurisdiction is to be disregarded. Plaintiff's allegations against the Mississippi State Port at Gulfport, the Port Authority and the MDA are without merit and such claims should be dismissed.

## PROCEDURAL BACKGROUND

On September 15, 2006, the instant action was commenced in the Circuit Court of Harrison County, Mississippi, First Judicial District ("Circuit Court"), as Civil Action No. A2401-2006-354 against the Mississippi State Port at Gulfport, the Port Authority, the MDA, Turbana Corporation ("Turbana"), Chiquita Fresh North America L.L.C. ("Chiquita"), Dole Food Company, Inc. ("Dole"), Crowley, SSA Marine, Inc. ("SSA"), ABC Corporation and XYZ Company.

On June 15, 2006, Plaintiff allegedly served a notice of claim against pursuant to the MTCA.[3] On August 24, 2006, Plaintiff allegedly served a supplemental notice of claim against only the Port Authority, alleging for the first time a claim of willful misconduct under the Emergency Management Law.[4]

Removal of this matter is timely pursuant to 28 U.S.C. § 1446. This Notice of Removal has been filed within thirty (30) days of receipt of the Complaint by any Defendant, which was the first pleading received by any Defendant through service of process or otherwise, and within one (1) year since the commencement of this action.

Copies of all process, pleadings, orders, and other papers filed in this action and obtained by Defendants are attached hereto and marked as composite Exhibit "1" and incorporated herein by reference.

---

[3] See the Complaint, Exhibit "A", a copy of which is attached hereto as part of composite Exhibit "1".

[4] See the Complaint, Exhibit "A", a copy of which is attached hereto as part of composite Exhibit "1".

## PARTIES

Plaintiff alleges that at all times material to the Complaint she was a resident of Harrison County, Mississippi.

Plaintiff names the Mississippi State Port at Gulfport as a Defendant. The Mississippi State Port at Gulfport, however, is not a proper Defendant as it is merely a reference to a geographic location in which the State of Mississippi owns property and the instant action is not an *in rem* proceeding. Accordingly, the Mississippi State Port at Gulfport is not a proper defendant, has no citizenship and should be disregarded for purposes of diversity.

The Port Authority is an agency of the State of Mississippi formed pursuant to the State Ports and Harbors Law, §§ 59-5-1, *et seq.*, of the Mississippi Code. The citizenship of the Port Authority for diversity purposes should be disregarded due to the improper joinder of same, which is further explained herein.

The MDA is an agency of the State of Mississippi which exists pursuant to §§ 57-1-1, *et seq.*, of the Mississippi Code. The citizenship of the MDA for diversity purposes should be disregarded due to the improper joinder of same, which is further explained herein.

Turbana is a foreign corporation incorporated under the laws of the State of Florida with its principal place of business in Coral Gables, Florida.[5] According to the records of the Mississippi Secretary of State, Turbana effectively withdrew from doing business in the State of Mississippi on May 24, 2005, prior to Hurricane Katrina.[6]

---

[5] *See* Exhibit "2".

[6] *See* Exhibit "2".

Chiquita is a foreign limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Cincinnati, Ohio.[7]  No members of Chiquita are residents of the State of Mississippi.

Dole is a foreign corporation incorporated under the laws of the State of Delaware with its principal place of business in Westlake Village, California.[8]

CATI is a foreign corporation incorporated under the laws of the State of Delaware with its principal place of business in Jacksonville, Florida.[9]

CLS is a foreign corporation incorporated under the laws of the State of Delaware with its principal place of business in Jacksonville, Florida.[10]

SSA is a foreign corporation incorporated under the laws of the State of Washington with its principal place of business in Seattle, Washington.[11]

Pursuant to 28 U.S.C. § 1441, the citizenship of ABC Corporation and XYZ Company, the fictitious parties named in Plaintiff's Complaint, shall be disregarded.

Pursuant to 28 U.S.C. §§ 1441 and 1446, all properly joined Defendants in this matter have consented to this Notice of Removal.[12]

---

[7] *See* Exhibit "3".

[8] *See* Exhibit "4".

[9] *See* Exhibit "5".

[10] *See* Exhibit "6".

[11] *See* Exhibit "7".

[12] The Mississippi State Port at Gulfport, the Port Authority and the Port Authority are not required to consent to the removal petition since they have been improperly joined. *See, e.g., Jenkins v. Farmington Cas. Co.,* 979 F. Supp. 454, 455 (S.D. Miss. 1997).

## JURISDICTION

This Court's subject matter jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332, which requires that complete diversity exists between Plaintiff and Defendants, except where Defendants have been improperly joined, and that the amount in controversy be greater than $75,000, exclusive of interest and costs. "[R]emoval is proper if it is facially apparent from the complaint that the claims are likely to be above $75,000."[13]

The first prong of this jurisdictional requirement has been met as there exists complete diversity of citizenship between the Plaintiff and all Defendants not improperly joined.

The second prong of this jurisdictional requirement has been met as it is facially apparent from the Complaint that the amount in controversy is well above $75,000, exclusive of interests and costs.[14]

Removal of this action to this Court is authorized pursuant to 28 U.S.C. §§ 1441 and 1446.

## IMPROPER JOINDER

### I.  Standard for Removal Based on Improper Joinder

The test for improper joinder is whether Crowley has demonstrated that there is no reasonable basis for this Court to predict that Plaintiff might be able to recover under state law against the alleged in-state Defendants – the Mississippi State Port at Gulfport, the Port Authority and the MDA.[15]  A challenge to removal based on improper joinder may be treated

---

[13] *Banger ex rel. Freeman v. Magnolia Nursing Home, L.P.*, 234 F. Supp. 2d 633, 636 (S.D. Miss. 2002).

[14] *See* ¶¶ 10, 45, 55, and 60 of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[15] *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004); *Gray v. U.S. Fid. & Guar.*, 646 F. Supp. 27, 29 (S.D. Miss. 1986).

similar to a motion for summary judgment,[16] and this Court may consider evidence outside of the pleadings "to identify the presence of discrete and undisputed facts" that would preclude Plaintiff's recovery against an in-state Defendant.[17]   Plaintiff "must plead specific facts [and] not mere conclusory allegations" to avoid removal based on improper joinder.[18]   A federal court "should be equally vigilant to protect the right to proceed in [f]ederal court as to permit the state courts, in proper cases, to retain their own jurisdiction."[19]

## II.  The Non-Existent Party

The "Mississippi State Port at Gulfport" is not a legal entity.  The port is not a proper defendant as it is merely a reference to a geographic location owned by the State of Mississippi and the instant action is not an *in rem* proceeding.  There is no statutory reference creating an agency called the "Mississippi State Port at Gulfport".

## III.  Plaintiff's Allegations Against the Port Authority and the MDA

Plaintiff avers that the Port Authority is liable for damages allegedly caused to Plaintiff's property by the containers, equipment and/or products that belonged to the tenants at the port and were "thrust upon [Plaintiff's] property by the winds and/or the storm surge of Hurricane Katrina."[20]   Plaintiff specifically alleges in certain paragraphs of the Complaint as follows:  the Hurricane Preparedness Plan of the Port Authority was inadequate;[21] the Hurricane Preparedness

---

[16] *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990) ("[T]his circuit treats improper joinder claims as capable of summary determination.").

[17] *See Smallwood*, 385 F.3d at 573-74.

[18] *Addison v. Allstate Ins. Co.*, 58 F. Supp. 2d 729, 734 (S.D. Miss. 1999) ("The court will not accept as true any conclusory allegations or unwarranted deductions of fact.").

[19] *Smallwood*, 385 F.3d at 573.

[20] See ¶¶ 35-38 of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[21] See ¶¶ 16, 46g and 46i of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

Plan of the Port Authority was inadequately implemented prior to Hurricane Katrina;[22] the Port Authority's hurricane preparation was negligent or inadequate;[23] objects were negligently or inadequately secured and created an unsafe condition;[24] Defendants failed to warn of hazardous conditions created by unsecured items;[25] Defendants failed to perform reasonable inspections to identify unsecured items;[26] Defendants failed to use reasonable care in supervising or controlling the activities of the tenants and/or employees;[27] the Port Authority's action(s) constituted a reckless disregard for the safety and well being of Plaintiff;[28] the in-state Defendants acted with willful misconduct while failing to or attempting to comply with the Mississippi Emergency Management Law;[29] the inadequately secured objects trespassed on Plaintiff's property;[30] and inadequately secured objects created a public nuisance.[31]

Each and every allegation against the Port Authority and the MDA relates to either their emergency management activities prior to or after Hurricane Katrina or some discretionary function.

---

[22] See ¶¶ 17, 46h and 46i of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[23] See ¶¶ 33 and 42 of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[24] See ¶¶ 35, 46a, 46b, 46d and 48 of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[25] See ¶ 46c of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[26] See ¶ 46e of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[27] See ¶ 46f of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[28] See ¶¶ 46j and 54 of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[29] See ¶ 46k of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[30] See ¶¶ 35-37 and 57-59 of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[31] See ¶¶ 39 and 62-68 of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

## IV. Arguments Supporting Federal Jurisdiction Based on Improper Joinder

### A. <u>State Agencies have Unqualified Immunity Pursuant to the Mississippi Emergency Management Law</u>

Under the Emergency Management Law, state agencies (including the Port Authority and the MDA) have unqualified immunity from liability.  The Mississippi Legislature succinctly described its intent upon enacting the Emergency Management Law as follows:

> It is the intent of the Legislature to reduce the vulnerability of the people and property of this state; to prepare for efficient evacuation and shelter of threatened or affected persons; to provide for the rapid and orderly provision of relief to persons and for the coordination of activities relating to emergency preparedness, response, recovery and mitigation among and between agencies and officials of this state, with similar agencies and officials of other states, with local and federal governments, with interstate organizations and with the private sector.[32]

The Mississippi Legislature further provided the following immunity under the Emergency Management Law:

> <u>Neither the state</u> nor any political subdivision thereof, <u>nor other agencies</u>, nor, except in cases of willful misconduct, the agents, employees, or representatives of any of them <u>engaged in any emergency management activities, while complying with or attempting to comply with this article or any rule or regulation promulgated pursuant to the provisions of this article, shall be liable for the death of or any injury to persons, or damage to property, as a result of such activity.</u>[33]

The Mississippi Legislature also provided that all provisions of the Emergency Management Law shall be <u>liberally construed</u> in order to effectuate its purposes.[34]

The definition of "'emergency management' means the preparation for, the mitigation of, the response to, and the recovery from emergencies and disasters."[35]  This definition certainly

---

[32] Miss. Code Ann. § 33-15-2(2).

[33] Miss. Code Ann. § 31-15-21 (emphasis added).

[34] Miss. Code Ann. § 33-15-47.

[35] Miss. Code Ann. § 33-15-5(c).  "'Natural emergency' means an emergency caused by a natural event, including, but not limited to, a hurricane, a storm, a flood, severe wave action, or an earthquake." Miss. Code Ann. § 33-15-5(j) (emphasis added).  "'Disaster' means any natural, technological or civil emergency as defined in this section that causes damage of sufficient severity and magnitude to result in a declaration of an

includes all of the Port Authority's preparation for, mitigation of, response to and post-recovery efforts from Hurricane Katrina.[36]

(1) Hurricane Procedures

The Port Authority's Hurricane Procedures were adopted by the Port Authority[37] as "emergency policies and procedures to be followed in the event of a hurricane or tropical storm striking in proximity to the [port]" and were thereafter filed with the Secretary of State.[38] The Port Authority's Hurricane Procedures thereby became rules and regulations promulgated pursuant to the Emergency Management Law.[39] Pursuant to such procedures, the Port Authority began hurricane preparations prior to an Executive Order that was executed by the Governor of Mississippi on August 26, 2005 declaring a state of emergency due to Hurricane Katrina.[40]

(2) Preparation for Hurricane

---

emergency by a county or municipality, the Governor or the President of the United States." Miss. Code Ann. § 33-15-5(m).

[36] See ¶¶ 4-9 of the Declaration of Dale Waltman, which is attached hereto as Exhibit "8".

[37] As a result of the relationship between the MDA and the Port Authority, the MDA had no duty whatsoever to act in connection with Hurricane Katrina. To the extent that it is alleged that the MDA was required to act or did act with regard to Hurricane Katrina, these actions would be emergency management activities, and therefore the MDA has unqualified immunity from liability under the Emergency Management Law as well.

[38] See the Port Authority's Hurricane Procedures, attached to the Complaint as Exhibit "B" at MPA-00232 to MPA-00233, a legible copy of which is attached hereto as Exhibit "11".

[39] See Miss. Code Ann. § 33-15-31("The governing bodies of the political subdivisions of the state and other agencies designated or appointed by the Governor are authorized and empowered to make, amend, and rescind such orders, rules, and regulations as may be necessary for emergency management purposes and to supplement the carrying out of the provisions of this article . . . . All orders, rules, and regulations promulgated . . . by any political subdivision or other agency authorized by this article to make orders, rules and regulations, shall have the full force and effect of law, when, in the event of issuance by . . . any state agency, a copy thereof is filed in the office of the Secretary of State . . . ."). See also Executive Order No. 653, Section 1, issued on November 16, 1990 by Governor Ray Mabus, stating that pursuant to the Emergency Management Law all state agencies have the authority to prepare emergency plans and procedures, and a copy of which is attached hereto as Exhibit "10".

[40] See Executive Order No. 939 a copy of which is attached hereto as Exhibit "9".

Mr. Waltman's Declaration states "that the Port Authority began its preparation for and mitigation of Hurricane Katrina" on or about August 24, 2005 by discussing the location of Tropical Storm Katrina with the tenants at the port.[41]  Mr. Waltman's Declaration states that the Port Authority also provided updates on the conditions and predicted landfall of Hurricane Katrina to the tenants at the port on August 25, 26 and 27, 2005.[42]  Mr. Waltman's Declaration states that at 8:00 a.m. on August 26, 2005 the tenants were notified to secure any small equipment and property on docks, drums or pallets, that the Operations and Maintenance Office of the Port Authority was secured, and that the Port Authority secured warehouses and equipment throughout that same day.[43]  The Port Authority further advised the tenants that it was attempting to have all vessels sail by the night of August 27, 2005.[44]

The activities of the Port Authority discussed in Mr. Waltman's Declaration also establish that the Port Authority was complying with or attempting to comply with its Hurricane Procedures which were passed pursuant to the Emergency Management Law.  For example, the Port Authority's Hurricane Procedures provide: (1) that the tenants will be requested to remove or secure potentially flying debris (e.g., pallets, gear, dunnage, etc.),[45] which is consistent with Paragraph 6a of Mr. Waltman's Declaration; (2) that an inspection of port areas will be made to insure that such areas are secured,[46] which is consistent with Paragraph 6f of Mr. Waltman's Declaration, as securing warehouses and equipment at the port would necessarily include an

---

[41] See ¶ 4 of the Declaration of Dale Waltman, which is attached hereto as Exhibit "8".

[42] See ¶¶ 5, 6a, 6c, 6e and 7 of the Declaration of Dale Waltman, which is attached hereto as Exhibit "8".

[43] See ¶¶ 6a, 6d and 6f of the Declaration of Dale Waltman, which is attached hereto as Exhibit "8".

[44] See ¶ 7 of the Declaration of Dale Waltman, which is attached hereto as Exhibit "8".

[45] See the Port Authority's Hurricane Procedures, attached to the Complaint as Exhibit "B" at MPA-00220, a legible copy of which is attached hereto as composite Exhibit "11".

[46] See the Port Authority's Hurricane Procedures, attached to the Complaint as Exhibit "B" at MPA-00220, a legible copy of which is attached hereto as composite Exhibit "11".

inspection of such areas; (3) that the Port Authority will notify the tenants of when a Hurricane Watch is in effect,[47] which is consistent with Paragraph 7 of and Exhibit "D" attached to Mr. Waltman's Declaration; (4) that all gantries, cranes and conveyors will be secured with proper lashing,[48] which is again consistent with Paragraph 6f of Mr. Waltman's Declaration; and (5) that the Maintenance Department will tape or board up all windows and glass doors to the MSPA offices,[49] which is consistent with Paragraph 6d of Mr. Waltman's Declaration.

### (3)  Unqualified Immunity Defeats Plaintiff's Allegations

The Emergency Management Law grants unqualified immunity to the Port Authority for any alleged liability ". . . for the death of or any injury to persons, or damage to property, as a result . . ." of the emergency management activities in which the Port Authority was engaged. This includes all of Plaintiff's claims and allegations against the Port Authority for the following: (1) the Hurricane Preparedness Plan of the Port Authority was inadequate (the drafting and enactment of the Port Authority's Hurricane Procedures was an activity at the very essence of the immunity provided by the Emergency Management Law); (2) the Hurricane Preparedness Plan of the Port Authority was inadequately implemented prior to Hurricane Katrina; (3) the Port Authority's hurricane preparation was negligent and inadequate; (4) objects were negligently and inadequately secured and created an unsafe condition; (5) Defendants failed to warn of hazardous conditions created by unsecured items; (6) Defendants failed to perform reasonable inspections to identify unsecured items; (7) Defendants failed to use reasonable care in supervising or controlling the activities of the tenants and/or employees; (8) the inadequately

---

[47] See the Port Authority's Hurricane Procedures, attached to the Complaint as Exhibit "B" at MPA-00221, a legible copy of which is attached hereto as composite Exhibit "11".

[48] See the Port Authority's Hurricane Procedures, attached to the Complaint as Exhibit "B" at MPA-00222, a legible copy of which is attached hereto as composite Exhibit "11".

[49] See the Port Authority's Hurricane Procedures, attached to the Complaint as Exhibit "B" at MPA-00222, a legible copy of which is attached hereto as composite Exhibit "11".

secured objects or an in-state Defendant trespassed on Plaintiff's property; and (9) inadequately secured objects created a public nuisance.

(4) <u>Plaintiff's Conclusory Allegations – Willful Misconduct</u>

Plaintiff will argue that there is a "willful misconduct" exception to the immunity granted by the Emergency Management Law and that it applies in this matter to the Port Authority. Section 33-15-21 of the Mississippi Code, however, provides in relevant part: "Neither the state nor any political subdivision thereof, nor other agencies, <u>nor, except in cases of willful misconduct, the agents, employees, or representatives of any of them</u> engaged in any emergency management activities . . . shall be liable . . ." (emphasis added). The specific language and the placement of the punctuation in the statute itself expressly states that the willful misconduct exception applies only to the agents, employees and representatives of state agencies, <u>not to the state agencies themselves</u>. Even though the plain language of § 33-15-21 shows that the willful misconduct exception does not apply to the political subdivisions or agencies thereof, § 33-15-47 further provides that this section shall be <u>liberally construed</u> in favor of immunity for those agencies.

In the alternative, even if the willful misconduct exception applies to state agencies, which is denied, Plaintiff's allegations against the Port Authority are conclusory and rebutted by Mr. Waltman's Declaration. As stated above, Mr. Waltman's Declaration attached hereto establishes that the Port Authority was engaged in several emergency management activities including, but not limited to, securing offices, warehouses and equipment at the port and notifying tenants to do the same prior to Hurricane Katrina.

Even though the law above should fully foreclose this matter, the Plaintiff's allegations regarding callous, gross, willful and wanton conduct are based on the mistaken belief that the

14

Port Authority did nothing in preparation of Hurricane Katrina. Such unsubstantiated allegations again are dispelled by Mr. Waltman's Declaration. Plaintiff's allegations are completely conclusory and should be disregarded by this Court.

(5) Conclusion

Plaintiff's claims against the Port Authority are clearly based on its preparations for and mitigation of Hurricane Katrina and the Port Authority's Hurricane Procedures. The Port Authority is immune from all such claims since it was engaged in emergency management activities and was complying with or attempting to comply with the Emergency Management Law or procedures promulgated pursuant thereto. Due to this immunity, there is no possibility of state law imposing liability against the Port Authority based on Plaintiff's claims. The Port Authority and the MDA, therefore, have been improperly joined in this action, and Crowley respectfully requests that such state agencies be dismissed from this action.

**B. The Sovereign Immunity of the Port Authority and the MDA Has Not Been Waived Under the MTCA with Regard to Plaintiff's Claims**

The MTCA was enacted to waive the sovereign immunity of the governmental entities of the State of Mississippi in limited circumstances, and the MTCA explicitly states the acts, omissions and/or circumstances for which sovereign immunity has not been waived.[50] Both the Port Authority and the MDA are agencies of the State, and are therefore subject to the provisions of the MTCA.[51]

The remedy provided against a governmental entity under the MTCA "is exclusive of any other civil action or civil proceeding by reason of the same subject matter against the

---

[50] *See* Miss. Code Ann. §§ 11-46-5 and 11-46-9.

[51] *See* Miss. Code Ann. §§ 57-1-1, *et seq.*, 59-5-21 and 11-46-1(g) and (j).

governmental entity . . . for the act or omission which gave rise to the claim or suit . . . ."[52]  In the limited circumstances in which the State does waive its sovereign immunity, it may attach any conditions it deems necessary for such waiver to be effectuated.[53]   Immunity exists for governmental entities if any subpart of § 11-46-9(1) of the Mississippi Code is applicable to the situation in question,[54] and such exemptions under the MTCA should be construed liberally, working in favor of limiting liability.[55]

In addition to the unqualified immunity provided by the Emergency Management Law, Plaintiff's claims against the Port Authority and the MDA are barred under the MTCA based on the following:  (1) state agencies are immune from liability based on discretionary actions; (2) state agencies are granted immunity from liability based on an injury caused by adopting or failing to adopt a regulation or procedure; and/or (3) state agencies are immune from liability based on an injury caused by a dangerous condition on the property of an agency that was not caused by the negligence or wrongful conduct of an employee of the agency.

(1)     The Port Authority and the MDA are immune for all discretionary acts

The MTCA states:

A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused . . . .[56]

---

[52] Miss. Code Ann. § 11-46-7(1).

[53] *See Simpson v. City of Pickens*, 761 So. 2d 855, 860 (Miss. 2000).

[54] *See, e.g., Pearl River Valley Water Supply Dist. v. Bridges*, 878 So. 2d 1013, 1016 (Miss. Ct. App. 2004).

[55] *In re Foust*, 310 F.3d 849, 864 (5th Cir. 2002).

[56] Miss. Code Ann. § 11-46-9(1)(d) (emphasis added).

A discretionary duty is a lawful obligation that requires "personal deliberation, decision, and judgment."[57]  In contrast, a ministerial duty is an obligation that has been positively imposed by law and leaves no room for judgment or discretion.[58]

The Mississippi Supreme Court has adopted the public policy function test to determine whether an act or omission is discretionary or ministerial.[59]  Under this test, the discretionary function exemption applies if an act or omission requires:  (1) an element of choice or judgment; and (2) whether the choice or judgment is based on considerations of social, economic or political policy.[60]

The intent of the discretionary function exemption is "to protect public policy objectives. It would run counter to the discretionary function exemption to second-guess or micro-manage the kinds of steps appropriate to maximize safety in governmental facilities, even where the decisions are made below the policy level."[61]  This exemption even extends to discretionary acts or omissions <u>for which ordinary care is not used</u>.[62]

(a)  <u>The Port Authority's Hurricane Procedures have nothing to do with the MDA</u>

There is no basis in law or fact for the Port Authority's Hurricane Procedures to be construed as applicable to the MDA.  Stated differently, there is absolutely no statute, regulation or hurricane preparedness plan that Plaintiff can point to that positively describes and imposes upon the MDA the actions to be taken at the port to prepare for and mitigate the effects of a hurricane.  Accordingly, any actions that were alleged to be taken by the MDA at the port in

---

[57] *State ex rel. Brazeale v. Lewis*, 498 So. 2d 321, 322 (Miss. 1986).

[58] *Coplin v. Francis*, 631 So. 2d 752, 754 (Miss. 1994).

[59] *Jones v. Miss. Dept. of Transp.*, 744 So. 2d 256, 260 (Miss. 1999) (citing *United States. v. Gaubert*, 499 U.S. 315, 322 (1991), as the authority from which the public policy function test was adopted).

[60] *Jones*, 744 So. 2d at 260.

[61] *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So. 2d 1136, 1143 (Miss. 1999) (quotation omitted).

[62] *Collins v. Tallahatchie County*, 876 So. 2d 284, 289 (Miss. 2004).

preparation of Hurricane Katrina would have been discretionary, and the MTCA provides immunity to the MDA on this basis for each of Plaintiff's claims.

(b) The Port Authority and the MDA's Immunity for Discretionary Functions

With regard to the Port Authority's hurricane preparations, Plaintiff can point to no law that: (1) specifically provides for what the Port Authority shall do to secure the property at the port in preparation of a hurricane; and (2) does not leave any room for personal judgment or discretion.

In as much as Plaintiff's claims are based solely upon the Port Authority's Hurricane Procedures, every single procedure therein that could arguably cause Plaintiff's alleged damages fits within the category of a discretionary function.  In fact, the Port Authority's Hurricane Procedures explicitly state, "We have not designed these procedures to handle every situation an employee may encounter during a tropical storm or hurricane" and "[E]mployees are encouraged to use their basic common sense and personal experience[, i.e., discretion,] in responding to specific situations."[63]

Further, Plaintiff alleges in the Complaint that the Port Authority or the Defendants failed to use ordinary or reasonable care.[64]  Plaintiff even alleges that the Port Authority's action(s) constituted a reckless disregard for the safety and well being of Plaintiff.[65]  Regardless of the level of negligence alleged, however, Mississippi law is clear that the discretionary function exemption applies "whether or not the discretion be abused."[66]

---

[63] See the Port Authority's Hurricane Procedures, attached to the Complaint as Exhibit "B" at MPA-00215, a legible copy of which is attached hereto as composite Exhibit "11".

[64] See ¶¶ 46a, 46b, 46g, 46h, 46i, and 47 of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[65] See ¶ 46j of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[66] Collins v. Tallahatchie County, 876 So. 2d 284, 289 (Miss. 2004).  See also ¶ 9 of the Declaration of Dale Waltman, which is attached hereto as Exhibit "8".

Without doubt, the actions or omissions taken or made by the Port Authority or the MDA prior to or after Hurricane Katrina fall within the realm of discretionary functions.  Accordingly, there is no possibility of state law imposing liability on the Port Authority or the MDA for any of Plaintiff's claims, demonstrating that such agencies have been improperly joined in this matter.

(2)   The Port Authority and the MDA are immune from liability for adopting or failing to adopt a rule, ordinance or regulation

The MTCA states:

A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [a]rising out of a legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature . . .  [or a]rising out of injury caused by adopting or failing to adopt a statute, ordinance or regulation . . . .[67]

This particular exemption from liability completely defeats Plaintiff's claim that the Port Authority and the MDA were negligent in the drafting and/or enacting of adequate hurricane procedures.  There can be no doubt that these particular allegations of Plaintiff are barred by the MTCA.[68]

(3)   The Port Authority and the MDA are immune for alleged dangerous conditions at the port

The MTCA states:

A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [a]rising out of injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity . . . .[69]

---

[67] Miss. Code Ann. §§ 11-46-9(1)(a) and (e).

[68] *See State v. Hinds County. Bd. of Supervisor*, 635 So. 2d 839, 842 (Miss. 1994).

[69] Miss. Code Ann. § 11-46-9(1)(v).

Plaintiff alleges on at least fourteen (14) occasions in the Complaint that the "tenants of the Port did little or nothing to move or secure their property at the [port]."[70]  Plaintiff further alleges that the inadequately secured objects created unsafe conditions and destroyed homes, businesses and property.[71]

It becomes clear under this exemption that Plaintiff's claims against the Port Authority and the MDA for any alleged unsafe or dangerous condition created by the alleged negligence or other wrongful conduct of the tenants at the port, which is denied, have no possibility of success under Mississippi law.

### C. **In the Alternative, Plaintiff failed to comply with the notice requirements of the MTCA**

As the exclusive remedy against a state agency, the MTCA provides:

(1)  After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity. . . .

(2)  Every notice of claim required by subsection (1) of this section shall be in writing, and shall be delivered in person or by registered or certified United States mail.  Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice.[72]

The Mississippi Supreme Court has emphasized a claimant's required compliance with the notice requirements of the MTCA prior to bringing suit as follows:

---

[70] See ¶¶ 18-29 and 31-32 of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[71] See, for example, ¶ 34 of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[72] Miss. Code Ann. § 11-46-11(1) and (2) (emphasis added).

[T]he MTCA requires persons wishing to file suit against a 'governmental entity or its employee' to provide notice 'ninety (90) days prior to maintaining an action,' and to provide 'a short and plain statement of the facts upon which the claim is based.' Pursuant to Miss. Code Ann. § 11-46-11(2), there are seven categories of information which must be included. The seven required categories are as follows: (1) the circumstances which brought about the injury; (2) the extent of the injury; (3) the time and place the injury occurred; (4) the names of all persons known to be involved; (5) the amount of money damages sought; (6) the residence of the person making the claim at the time of injury; and (7) the claimant's residence at the time of filing the notice. The language of Miss. Code Ann. § 11-46-11(2) clearly states that 'every notice of claim shall contain a short and plain statement' addressing these seven categories of information or facts upon which the claim is based and this 'shall be in writing.' As such, the language contained in Miss. Code Ann. § 11-46-11(2) is mandatory.

With respect to the seven required categories of information [required by §11-46-11(2)], the failure to provide any one of the seven categories is failure to comply. Thus, the term "substantial compliance" in this context is rendered meaningless. Either the written notice complied with Miss. Code Ann. § 11-46-11(2) by disclosing all seven required categories of information, or it did not comply with the statute by failing to disclose all seven required categories of information.[73]

Any cause of action instituted against a state agency prior to a plaintiff providing the required categories of information in a written notice of claim pursuant to § 11-46-11 is due to be dismissed.[74] Plaintiff has failed to meet these notice requirements with regard to the Port Authority and the MDA.

The notices of claim attached as Exhibit "A" to Plaintiff's Complaint fail to specify the extent of the injury, the amount of money damages sought, the residence of the person making the claim at the time of injury and the claimant's residence at the time of filing the notice.

Further, Plaintiff did not even attempt to provide some of the necessary information as required by the MTCA until allegedly serving the subsequent supplemental notice of claim on August 24, 2006, thereby failing to comply with the 90-day notice requirement under the MTCA

---

[73] *South Cent. Reg'l Med. Ctr. v. Guffy*, 930 So. 2d 1252, 1257-58 (Miss. 2006) (citations omitted) (emphasis added).

[74] *Guffy*, 930 So. 2d at 1259; *Black v. City of Tupelo*, 853 So. 2d 1221 (Miss. 2003); *Little v. Miss. Dept. of Human Serv.*, 835 So. 2d 9, 12 (Miss. 2002).

before commencing this action on September 15, 2006.   Accordingly, Plaintiff's allegations against the Port Authority and the MDA are due to be dismissed for <u>failure to timely comply with the dictates of § 11-46-11</u> of the Mississippi Code <u>prior</u> to filing suit.[75]

For any of these alternative reasons alone, the Port Authority and the MDA have been improperly joined and should be dismissed from this action.

### D.   In the Alternative, the Port Authority and the MDA as a Landlord Are Not Liable for the Property or Acts/Omissions of the Tenants

The Port Authority operates the port as a landlord pursuant to leases and the MDA is required to consent to all transfers of property interest at the port.   The Mississippi Supreme Court has recognized the Port Authority and MDA in these capacities,[76] and Plaintiff obviously recognizes the Port Authority's role as a landlord as shown by the repetitious allegation of the Complaint stating that the "tenants of the Port did little or nothing to move or secure their property at the [port]."[77]   Together, the Port Authority and the MDA collectively held the position of landlord with every tenant named as a defendant in the Complaint at the time of and immediately preceding Hurricane Katrina.[78]

The law of Mississippi is clear that a lessee (not the landlord) in possession or control of property is required to maintain the leased premises in a safe condition, unless otherwise provided in the contract, and liability for any alleged unsafe condition on the premises runs with the possession and control of the property.[79]   Plaintiff's claims against the Port Authority and

---

[75] *Guffy*, 930 So. 2d at 1259; *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820 (Miss. 2006).

[76] *See Gulfside Casino P'Ship v. Miss. State Port Auth.*, 757 So. 2d 250, 256-63 (Miss. 2000).

[77] See ¶¶ 18-29 and 31-32 of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[78] Turbana discontinued doing business in Mississippi in May of 2005 and was no longer a tenant, nor had any property, at the port.  *See* Exhibit "2" attached hereto.

[79] *Titus v. Williams*, 844 So. 2d 459, 466 (Miss. 2003) (citing *Wilson v. Allday*, 487 So. 2d 793, 796 (Miss. 1986), *overruled on other grounds, Mayfield v. The Hairbender*, 903 So. 2d 733, 736 n.1 (Miss. 2005)).

MDA are even one step further removed from this principle of law because Plaintiff alleges that the unsecured property of the tenants created the unsafe conditions at the port, which is denied, not that the actual real property leased to such tenants constituted an unsafe condition. Additionally, each lease agreement between the Port Authority, the MDA and each respective tenant at the port named as a defendant herein expressly states that the Port Authority and the MDA have no obligation or responsibility for such tenants' business operations.

Without any responsibility or obligation for the business or property of the tenants, the Port Authority and the MDA are not liable for any alleged negligence or public nuisance[80] stemming from damages allegedly caused by objects of the tenants which Hurricane Katrina caused to be "thrust upon Plaintiff's property."[81]   Further, there is no possibility of Plaintiff establishing a cause of action for trespass against the Port Authority or the MDA for objects belonging to and under the care, custody and control of their tenants, because a trespass action requires the Plaintiff to prove, *inter alia*, an actual invasion of the Plaintiff property by the alleged wrongdoer or some property of the alleged wrongdoer.[82]

Given these facts and the principle of law in Mississippi that liability for unsafe conditions on property runs with the possession and control of property, there is no possibility of state law imposing liability on the Port Authority or the MDA based on Plaintiff's claims.   The Port Authority and the MDA have been improperly joined in this action only in an effort to

---

[80] For a private individual to recover on an action for public nuisance, there must be at a minimum a showing of negligence.  *See Leaf River Forest Prod., Inc., v. Ferguson*, 662 So. 2d 648, 644 (Miss. 1995) (stating a public nuisance requires an "unreasonable interference"); Restatement (Second) of Torts § 821B cmt. e (1979) (stating that an unreasonable interference must at least be based on negligent conduct).

[81] See ¶ 37 of the Complaint, a copy of which is attached hereto as part of composite Exhibit "1".

[82] *See Prescott v. Leaf River Forest Prods., Inc.*, 740 So. 2d 301, 310 (Miss. 1999).  See ¶ 10 of the Declaration of Dale Waltman, which is attached hereto as Exhibit "8", stating that the Port Authority is not responsible for the care, custody or control of any cargo of the tenants at the port.

defeat this Honorable Court's rightful jurisdiction.   Accordingly, the Port Authority and the MDA should be dismissed from this action.

## CONCLUSION

As discussed above, Plaintiff asserts no legally cognizable grounds for imposing liability upon the "Mississippi State Port at Gulfport," a non-legal entity, the Port Authority or the MDA in this action.   Under the improper joinder doctrine, therefore, the citizenship of the non-legal entity and state agencies cannot be considered in determining whether diversity of citizenship jurisdiction exists, and these Defendants should be dismissed.

By filing this Notice of Removal, Crowley does not waive its right to assert any defenses and/or objections to which it is entitled.

A copy of this Notice of Removal has been sent to all counsel of record and will be filed with the Clerk of the Circuit Court.

WHEREFORE, PREMISES CONSIDERED, Crowley requests that this Court assume full jurisdiction over this cause herein as provided for by law.

Respectfully submitted, this the 16th day of October, 2006.

CROWLEY LINER SERVICES, INC., and
CROWLEY AMERICAN TRANSPORT, INC.

BY:     BALCH & BINGHAM LLP

BY:     _____
         Of Counsel

BEN H. STONE (MSB No. 7934)
JONATHAN P. DYAL (MSB No. 99146)
R. MARK ALEXANDER (MSB No. 100748)
M. BRANT PETTIS (MSB No. 101976)
BALCH & BINGHAM LLP
Post Office Box 130
1310 Twenty-Fifth Avenue
Gulfport, MS 39501-7748
Telephone:     (228) 864-9900
Facsimile:     (228) 864-8221

## CERTIFICATE OF SERVICE

I, the undersigned counsel, do hereby certify that I have this day mailed, via U.S. Mail,

postage prepaid, a true and correct copy of the above and foregoing pleading to:

James L. Davis, III
1904 24th Avenue
P. O. Box 1839
Gulfport, MS  39502

Allen E. Graham
Mandy Herndon
Lyons, Pipes and Cook
2 N. Royal St.
Mobile, AL 36602

Thomas C. Anderson
Balch & Bingham LLP
Post Office Box 130
Gulfport, MS 39502

Gary A. Hemphill
Phelps Dunbar LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130

Roland F. Samson, III
Samson & Powers
2408 14th Street
P. O. Box 1417
Gulfport, MS 39502

Thomas Wagner
Wagner & Bagot LLP
650 Poydras St Ste 2660
New Orleans, LA 70130

Richard Salloum
Franke & Salloum
2605 14th Street
P.O. Box 460
Gulfport, MS 39502

THIS, the 16th day of October, 2006.

_____
Of Counsel